**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO.: 3:20-CV-822-G** |
| **JEFFREY D. CORDES, WILLIAM M. AISENBERG, AND THOMAS J. FELTON,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>DEFENDANT THOMAS J. FELTON'S MOTION TO STRIKE IMMATERIAL CONTENT AND DISMISS COMPLAINT AND BRIEF IN SUPPORT</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................... 3

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................... 4

III.    APPLICABLE LEGAL STANDARDS ......................................................... 5

IV.     ARGUMENT AND AUTHORITIES ............................................................ 7

    A.    The Court should strike the immaterial and scandalous Footnote 1 .................. 7
    B.    The SEC improperly relies upon both shotgun and puzzle pleading .................. 8
    C.    The SEC presents its allegations against Mr. Felton in an impermissibly
          conclusory manner and fails to meet the heightened pleading standard .......... 12

        1.    Conclusory allegations related to specific customers. .......................... 13
        2.    Conclusory allegations of knowledge, recklessness, and
              negligence. ........................................................................ 14
        3.    Conclusory allegations of aiding and abetting. .................................. 17

    D.    The SEC fails to allege materiality sufficiently. ................................. 18
    E.    The SEC fails to allege Mr. Felton's alleged actions occurred "in the offer
          or sale" or in "connection with the purchase or sale" of a security. ............ 20
    F.    Allegations concerning Mr. Felton's alleged deceptive alteration of
          paperwork are false as demonstrated by full versions of the referenced
          communications. .................................................................. 21

V.      CONCLUSION .................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ...............................................................................16

*In re Alamosa Holdings, Inc. Sec. Litig.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2005) ..................................................................8

*Am. Realty Tr., Inc. v. Matisse Capital Partners, LLC*,
  No. 3:00-CV-1801-G, 2001 WL 1343765 (N.D. Tex. Oct. 26, 2001) ...................14

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
  476 F.3d 1261 (11th Cir. 2007) ..........................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................5, 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................5, 6

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ................................................................................6

*Bosarge v. Miss. Bureau of Narcotics*,
  796 F.3d 435 (5th Cir. 2015) .........................................................................21, 22

*In re Cendant Corp. Sec. Litig.*,
  76 F. Supp. 2d 539 (D.N.J. 1999) ...................................................................20, 21

*Employee Benefit Plans, S.E.C. Securities Act Release*,
   No. 33-6188, 1980 WL 29482 (Feb. 1, 1980) ......................................................20

*Lampkin v. UBS Fin. Servs., Inc.*,
  925 F.3d 727 (5th Cir.), *cert. denied*, 140 S. Ct. 389, 205 L. Ed. 2d 218 (2019)...................20

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
  238 F.3d 363 (5th Cir. 2001) ............................................................................7, 12

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ..............................................................................11

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
  519 Fed. Appx. 890 (5th Cir. 2013).......................................................................6

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ................................................................................6

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ..............................................................................18

*S.E.C. v. Apuzzo*,
  689 F.3d 204 (2d Cir. 2012)................................................................................17

*S.E.C. v. Big Apple Consulting USA, Inc.*,
    783 F.3d 786 (11th Cir. 2015) ........................................................................17

*S.E.C. v. Fraser*,
    No. CV-09-00443-PHX-GMSC, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009)......................9

*S.E.C. v. Shanahan*,
    646 F.3d 536 (8th Cir. 2011) ....................................................................15, 16

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) ....................................................................17, 18

*United States v. Coney*,
    689 F.3d 365 (5th Cir. 2012) .........................................................................5

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .........................................................................9

*Zucker v. Farish*,
    No. 3:18-CV-01790-K, 2018 WL 6570867 (N.D. Tex. Dec. 12, 2018)..............................8, 9

## Statutes

15 U.S.C. § 77q(a) ................................................................................ passim

15 U.S.C. § 77o(b) ...................................................................................17

15 U.S.C. § 78j(b) ....................................................................................20

15 U.S.C. § 78m ......................................................................................18

15 U.S.C. § 78t(e) ....................................................................................17

## Other Authorities

17 C.F.R. § 240.10b–5 ..........................................................................10, 20

17 C.F.R. § 240.13b2-2 .........................................................................10, 11

Fed. R. Civ. P. 8. ................................................................................ passim

Fed. R. Civ. P. 9. ................................................................................ passim

Fed. R. Civ. P. 12. ............................................................................... passim

Fed. R. Evid. 404. ....................................................................................7

Comes now Defendant Thomas J. Felton ("Mr. Felton") pursuant to Rules 12(f), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure and files this Motion To Strike Immaterial Content and to Dismiss Plaintiff's Complaint and Brief in Support and would show as follows:

## I.   <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

A review of the Securities and Exchange Commission's ("SEC" or "Plaintiff") complaint reveals that it was primarily a vehicle for a settlement with Ironclad Performance Wear Corp.'s ("Ironclad") former CEO, Jeffrey Cordes ("Cordes"), and former CFO, William Aisenberg ("Aisenberg").   After completing its investigation of a barely public, insider-controlled, thinly-traded, now bankrupt company and settling with the CEO and CFO, the SEC is trying to hold one last person responsible, but the SEC is going too far. The conclusory allegations against Mr. Felton in the Complaint read like what they are, an afterthought.

The Complaint's Statement of Facts includes a footnote that is an apparent attempt to inappropriately attack Mr. Felton by suggesting he was somehow affiliated with alleged unrelated wrongdoing.  That footnote should be stricken.

More importantly the Complaint should be dismissed in its entirety for a failure to state a claim as the SEC engages in impermissible "puzzle" and "shotgun" pleading, presents its allegations in an insufficient and conclusory manner, fails to establish materiality of alleged misrepresentations, fails to establish that any of Mr. Felton's alleged conduct fits within the ambit of the fraud statutes he is alleged to have violated, and misrepresents Mr. Felton's conduct in cited communications.

The deficiencies with the various claims directed against Mr. Felton are summarized in the following chart:

| Deficiency                                    Claim | 1 | 2 | 3 | 4 | 6 | 8 | 9 | 11 |
|------------------------------------------------------|---|---|---|---|---|---|---|----|
| Puzzle Pleading                                      | X | X | X | X | X | X | X | X  |
| Shotgun Pleading                                     | X | X | X | X | X | X | X | X  |
| Conclusory Allegations/Fails to Meet Heightened Pleading Standard | X | X | X | X | X | X | X | X  |
| Failure to Allege Materiality                        | X | X | X | X | X |   | X |    |
| Failure to Allege Offer, Purchase, or Sale of a Security | X | X | X | X |   |   |   |    |

Additionally, many of Plaintiff's factual allegations (including, but not limited to, those related to Customers A, B, D, and G) are also deficiently pleaded because, among other things, they are conclusory, fail to meet heightened pleading for averments of fraud, and misrepresent the evidence that is incorporated into the complaint.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2014, Ironclad hired Cordes as CEO and Aisenberg as CFO to turnaround its dismal financial performance. Cordes and Aisenberg were unable to pull Ironclad out of its tailspin and they were fired in 2017 in the wake of allegations of impropriety. Mr. Felton's employment was terminated by the new management.

On April 8, 2020, the SEC filed its Complaint (the "Complaint") in this case against Cordes, Aisenberg, and Mr. Felton. [Dkt. No. 1]. The same day, the SEC filed two unopposed motions for judgment against Cordes and Aisenberg, which the Court granted the following day. [Dkt. Nos. 6–9].

Mr. Felton is not like Cordes and Aisenberg. Both were extremely sophisticated, C-level employees. Mr. Felton, on the other hand, was an information technology ("IT") and supply-chain manager, whose understanding of accounting and related responsibilities was limited. Tellingly, the SEC completely fails to allege any facts that suggest why Mr. Felton would have had any motive or incentive to violate the law or that he made any money based on his alleged actions.[1] The SEC's interpretation of the alleged events at Ironclad is not plausible and that is reflected in its Complaint. As set forth below, the SEC has failed completely to state a claim against Mr. Felton upon which relief may be granted and the Complaint should be dismissed.

### III.   APPLICABLE LEGAL STANDARDS

Under Rule 12(f), the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Allegations are immaterial or impertinent if they have no possible relationship to the controversy. The Court may grant a motion to strike based on immateriality or impertinence when the statement "to be stricken has no possible relation to the controversy[.]" *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (internal quotation marks and citations omitted). Statements are not scandalous under Rule 12(f) if they are "directly relevant to the controversy at issue and are minimally supported in the record." *Id.* (internal quotation marks omitted and citations omitted).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] Prior to filing this lawsuit, the SEC notified Mr. Felton that it believed he had violated 15 U.S.C. § 77q(a)(2). Proving a violation of that section would have required the SEC to show that Mr. Felton personally received money or property based on his alleged violations. *See* 15 U.S.C. § 77(q)(a)(2) ("It shall be unlawful . . . **to obtain money or property** by means of any untrue statement of a material fact . . . .") (emphasis added). Conspicuously absent from the SEC's complaint is any allegation that Mr. Felton violated that section—a tacit admission that Mr. Felton did not receive any money or property based on his alleged actions.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court is required to accept as true the complaint's factual allegations, drawing all reasonable inferences in favor of the plaintiff, mere labels, conclusions, "formulaic recitation[s] of the elements[,]" "naked assertion[s] devoid of further factual enhancement[,]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (internal quotation marks and citation omitted). After disregarding the conclusory allegations, the petition must contain sufficient well-pleaded factual allegations to "nudge[] [plaintiff's] claims . . . across the line from conceivable to plausible." *Id.* at 680–81 (internal quotation marks and citation omitted).

Under Rule 9(b), the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit has instructed that Rule 9(b) requires a complaint to allege, "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (internal quotation marks and citation omitted). In other words, a complaint alleging fraud must provide the "who, what, when, where, and how" of the defendant's alleged conduct. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation marks and citation omitted). The Fifth Circuit has explained the purpose of Rule 9(b) as follows: "[t]he heightened pleading standard for fraud claims supplies defendants with the information they need to prepare responses, prevents discovery intended as a mere fishing expedition, and protects the defendants' reputations from baseless allegations." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 Fed. Appx. 890, 893 n.2 (5th Cir. 2013).

Crucially, Rule 9(b)'s applicability is not limited to claims that include fraud or mistake as elements. Rather, the heightened pleading standard applies to all averments of fraud. *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Where averments of fraud are made in a claim for which fraud is not an element, failure to satisfy the heightened pleading requirements leaves the court with an option. The court may disregard each inadequately pleaded factual allegation of fraud and then analyze the remaining factual allegations to see whether a claim has been stated, but the court is not required to the plaintiff's work for him. *Id*. Alternatively, as the Fifth Circuit has explained: "A district court need not rewrite such a deficient complaint. It may dismiss, without prejudice, placing that responsibility upon counsel." *Id*.

## IV.   ARGUMENT AND AUTHORITIES

### A.   The Court should strike the immaterial and scandalous Footnote 1.

As an initial matter, in Footnote 1, the SEC attempts to cast aspersions on Mr. Felton by alleging he was formerly employed at a company where Cordes and Aisenberg were accused of wrongdoing. *See* Comp. at 3. The matter referenced by the SEC was a civil lawsuit involving private parties, which was settled—Mr. Felton was not a party to the civil lawsuit or the settlement. Importantly, these allegations have no possible relationship to the controversy in this case, but are problematic because they suggest, without any supporting allegations, that Cordes and Aisenberg engaged in wrongdoing previously, and that Mr. Felton was somehow involved. Even if the SEC had alleged sufficiently Mr. Felton's involvement in collateral misconduct, however, the Court would presumably exclude any related evidence under Federal Rule of Evidence 404(b). In short, Footnote 1, is immaterial, impertinent, and scandalous. Therefore, the Court should strike it from the Complaint and not consider it for any purpose including whether the SEC has stated a claim against Mr. Felton.

**B.      The SEC improperly relies upon both shotgun and puzzle pleading.**

The SEC's entire Complaint engages in "puzzle" and "shotgun" pleading, two impermissible practices that seek to force Mr. Felton and the Court to speculate which, if any, of the factual paragraphs are connected to the eight claims alleged against Mr. Felton and how they are supposedly connected.

A complaint that isolates the allegations and elements while leaving to the Court, and the Defendant, to infer connections constitutes impermissible "puzzle pleading" and may be dismissed for failure to state a claim. *See In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 857–58 (N.D. Tex. 2005) ("[A]ssembling puzzles is not the duty of the Court . . . . [t]he Court will not waste its resources attempting to construe which statements are actionable and why each is actionable."). "Shotgun pleadings" are lengthy pleadings that incorporate by reference all preceding paragraphs while progressing through multiple counts. *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018).   Shotgun pleadings may be dismissed because they violate the pleading standards articulated in both Rules 8 and 9. *Id.* (citing Fed. R. Civ. P. 8(a) & 9(b)).

The SEC's Complaint in this matter engages in both shotgun and puzzle pleading and thus fails to meet the pleading requirements of Rule 9(b) by stating allegations of fraud with particularity and generally fails to adhere to the basic pleading standards of Rule 8(a) that require short and plain statements.

The Complaint recites forty-one paragraphs of facts and background before leveling eleven claims against the Defendants, eight of which name Mr. Felton.  Each claim begins with the same sentence before launching into a bare-bones recitation of the elements, "Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this

Claim."  In this way "the claims section[] simply paraphrase[s] or quote[s] the language of the statutes and rules, leaving Defendants (and the Court) with the task of combing the Complaint and inferring, rightly or wrongly, what specific conduct the SEC intended to assert as a violation."  *See S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMSC, 2009 WL 2450508, at \*14 (D. Ariz. Aug. 11, 2009) (dismissing certain claims brought by SEC for failure to plead adequately).

Here, Mr. Felton is left to wonder which of the forty-one paragraphs allegedly supports each of the claims against him since the vast majority concern the conduct of his co-defendants, impute knowledge of conduct to Mr. Felton in a conclusory manner, and/or generally allege that "Ironclad" knew of or acted in a certain fashion. "Complaints of this type set forth an excessive number or [sic] facts before alleging that all the provided facts support various counts in the complaint, with the result being that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Zucker*, 2018 WL 6570867, at \*3 (internal quotation marks and citations omitted).  The result is a poorly pleaded, long-winded, and prolix Complaint that states little with particularity and fails to meet the pleading standards of Rule 8, let alone the heightened standards required by Rule 9(b) for the claims alleging fraud. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178–180 (5th Cir. 1997) (reversing district court and remanding with instructions to dismiss for failure to comply with the particularity requirement of Rule 9(b)).

To illustrate the difficult situation Mr. Felton and this Court are placed in as a result of Plaintiff's shotgun and puzzle pleadings, Defendant directs the Court to just a small sample of the factual paragraphs, which, although incorporated into each and every Claim, appear to have nothing to do with Mr. Felton, leaving him to wonder if there is a connection he and the Court are

expected to infer.  For example, paragraph thirty-six describes recognition of revenue from canceled orders "[t]hrough Cordes and Aisenberg's actions and directives. . . ."  *See* Comp. ¶ 36.  Mr. Felton is not mentioned as an actor with respect to the alleged wrongful recognition of this revenue.  Another paragraph concerns revenue that was allegedly recognized despite the customer never paying the invoice and the goods having never been delivered.  *See* Comp. ¶ 33.  Once again, Mr. Felton is not mentioned at all with respect to these transactions, although Plaintiff indiscriminately incorporated this paragraph as part of the basis for each of the eight claims leveled against Mr. Felton—including the two claims that are directed at him only.

In addition to the problems posed by the blanket incorporation of apparently irrelevant paragraphs into each Claim against Mr. Felton, problems are presented when the Court and Mr. Felton must attempt to decipher which of the possibly relevant paragraphs specifically support each Claim.  Plaintiff's second and third claims against Mr. Felton: Aiding and Abetting violations of the Antifraud Provisions of the Exchange Act Section 10(b) and Rules 10b-5(a) and 10b-5(c) and Sections 17(a)(1) and 17(a)(3), respectively illustrate this problem.  Plaintiff incorporates all of the background and factual paragraphs into both claims and then simply recites the elements of each claim without any reference to specific conduct or statements, leaving Mr. Felton and this Court to try and decipher exactly what alleged statements or actions by Mr. Felton, "employed devices, schemes, and artifices to defraud" and which alleged acts, practices, and courses of business "operated as a fraud or deceit upon purchasers, prospective purchasers, and other persons."

Similarly, Claim Nine exemplifies the problems presented by the SEC's Complaint. In its Ninth Claim for Relief, the SEC alleges "Misrepresentations and Misconduct in Connection with Preparation of Required Reports Violations of Exchange Act Rule 13b2-2 Against All

Defendants." After generally incorporating the first forty-one paragraphs, the SEC then essentially quotes verbatim from the cited regulations. *See* Comp. ¶¶ 70-73.

There is no hint of what the material untrue facts were or what the material omissions may have been, let alone any allegations that suggest how Mr. Felton specifically violated Section 13. Discerning how Mr. Felton violated the reporting provisions of the Exchange Act is especially difficult because Mr. Felton did not sign any of the SEC filings the Plaintiff alleges are inaccurate.[2] Mr. Felton is simply left to guess how the SEC believes he has violated the law in the absence of particularized claims.

In total, of the twenty-eight paragraphs that comprise the eight claims against Mr. Felton, eight merely incorporate all forty-one background and factual paragraphs, eight state that injunctive relief is necessary, and nine essentially copy and paste elements from the relevant statutes and regulations. Ultimately, only three paragraphs—sixty-one, sixty-eight, and seventy-five—contain the non-conclusory, albeit essentially identical, factual allegation that Ironclad's stock was registered.

The puzzle and shotgun pleading relied upon by the SEC is confusing and attempts to force Mr. Felton and this Court to divine how it all might fit together. The duty to present succinct and clear pleadings rests with the Plaintiff and for this reason the Court should dismiss this Complaint for failure to state a claim.

---

[2] The Fifth Circuit has stated that in deciding a motion to dismiss for failure to state a claim, it is appropriate for a court to take judicial notice of public disclosure documents that are required to be filed with the SEC and are actually filed with the SEC. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 & n. 1 (5th Cir. 1996).

**C.     The SEC presents its allegations against Mr. Felton in an impermissibly conclusory manner and fails to meet the heightened pleading standard.**

The Supreme Court has explained that conclusory allegations must be disregarded because they are not entitled to the assumption of the truth.  *See e.g., Iqbal,* 556 U.S at 678–80. Even non-conclusory allegations that are entitled to the assumption of truth must combine to state a plausible claim for relief. *Id.* Moreover, in the context of the current case, all of the claims must also be analyzed initially under the heightened pleading standard of Rule 9(b) because all claims either (1) contain fraud as an element or (2) incorporate Plaintiff's allegations that Mr. Felton has engaged in fraudulent conduct. *Lone Star*, 238 F.3d at 368.

Conclusory statements do not satisfy the basic pleading requirements of Rule 8(a), let alone the heightened pleading standard Plaintiff must satisfy with respect to its averments of fraud which require pleading with particularity.  Under Rule 9(b), a court cannot credit a complaint's averments of fraud unless they meet the heightened pleading standard by alleging the necessary factual detail. *Id.*  In this case, the Complaint is rife with conclusory allegations of fraud that are not supported by the necessary factual detail.

The paragraphs constituting the claims themselves (the "Claims Paragraphs") are almost entirely conclusory and appear to be cut-and-pasted from the corresponding statutes and regulations. Moreover, it is difficult, if not impossible to connect the factual allegations in the Complaint to the eight claims against Mr. Felton given the near complete lack of specifics in the Claims Paragraphs, but this task is further complicated by the insufficient manner in which Plaintiff has attempted to allege fraudulent conduct by Mr. Felton in the forty-one paragraphs it has cobbled together in its attempt to support its eight claims against him.  Many of the allegations in the factual paragraphs concerning Mr. Felton are conclusory averments of fraud which lack sufficient factual support.  Therefore, those averments are not entitled to the assumption of truth

and must be disregarded as a matter of law.  The following represent a sampling of Plaintiff's use of conclusory statements and resulting failure to satisfy the basic and heightened pleading standards.

### 1.    Conclusory allegations related to specific customers.

The following paragraphs dealing with **Customer A** and **Customer B** exemplify the kind of conclusory statements upon which SEC is attempting to base its claims against Mr. Felton:

> "Customer A entered into each of the purchase transactions pursuant to a verbal 'backstop' agreement with Cordes that guaranteed that Ironclad would repurchase any gloves Customer A did not sell for the original price, plus the cost of relabeling/repackaging, and a commission for Customer A. ***Felton was aware of the backstop agreement before the sale to Customer A occurred. Felton was also aware that Customer A did not perform any value-added services to earn a commission.***"

Comp. ¶ 29 (emphasis added).

> "In 2015, Ironclad entered into a Canadian distribution agreement with Customer B. In the fourth quarter of 2015, despite the fact that Customer B had not paid any of its prior invoices, Ironclad offered Customer B extended payment terms for a new sale and recognized $1,289,330 in revenue. Pursuant to a December 7, 2015 letter from Cordes to Customer B, "some of the order, after billing, will be held for you in California at a separate warehouse until you can clear your Canada warehouse." In fact, gloves totaling $976,490 (11.6 percent of Ironclad's fourth quarter 2015 net sales) never left Ironclad's warehouse, and Customer B never made any payments on any invoices. In the first half of 2016, Ironclad brought back gloves from the Customer B inventory that was held in the third-party warehousing company's warehouse as needed to sell to other customers without completing any return authorizations. ***Felton oversaw these transactions***. When it became clear that Customer B was facing bankruptcy, Ironclad negotiated the return of the remaining Customer B inventory, and return authorizations were processed in September, October, and November 2016."

Comp. ¶ 32 (emphasis added).

What is a "backstop agreement," how was Mr. Felton aware of it, and why is it a problem? How and when did he become aware that Customer A did not perform any value-added services? In what manner did Mr. Felton oversee the transactions involving Customer B?   What involvement, if any, did Mr. Felton have with revenue recognition involving these transactions?

What did Mr. Felton obtain by his alleged actions?  That the answers to these basic questions are found nowhere in the Complaint proves that the SEC fails to present the facts necessary to meet the "plausibility" standard of Rule 8, let alone the heightened standard under Rule 9(b) requiring the "who, what, when, where, and how" when averments of fraud are at issue.  *Cf., Am. Realty Tr., Inc. v. Matisse Capital Partners, LLC*, No. 3:00-CV-1801-G, 2001 WL 1343765, at *2–3 (N.D. Tex. Oct. 26, 2001) (granting a motion for a more definite statement where Plaintiff had alleged the "who" of its fraud claim but failed to allege the "when, where, and how").

Similar issues exist with the allegations related to **Customer G**, in which the only sentence addressing Mr. Felton alleges: "In early 2017, Cordes, Aisenberg, and Felton sent numerous emails both internally and to the customer describing the 'critical' and 'serious' need to obtain a purchase order from [Customer G]."  Comp. at ¶ 39.  Even assuming Mr. Felton sought to obtain a purchase order from Customer G, there are no allegations that could plausibly tie him to any impropriety.  Is it not true that virtually all manufacturing businesses depend on customer orders and treat them as critical to their survival?  More is required.

2.    **Conclusory allegations of knowledge, recklessness, and negligence.**

The Complaint also fails to meet the pleading threshold of Rule 8 when it attempts to impute implausibly specialized knowledge to Mr. Felton and alleges he was reckless or negligent without alleging supporting facts that plausibly could lead to such conclusions.  For example, the Plaintiff attempts to impute Mr. Felton with specialized accounting knowledge in the form of the Generally Accepted Accounting Principles or "GAAP" despite the fact that he has no accounting background.  As the Complaint states, "Under Section 605-10-25 of [GAAP] delivery of goods is a key factor in determining whether revenue has been realized and earned, and it is inappropriate, with limited exceptions not applicable here, to recognize revenue for products that have not yet

shipped." Comp. at ¶ 18.  The SEC did not even allege that Mr. Felton had any education or training in accounting or facts that would suggest his knowledge of specialized accounting principles is even plausible.

Notably, in *S.E.C. v. Shanahan*, the Eighth Circuit Court of Appeals upheld a judgment as a matter of law in favor of a defendant facing a civil enforcement action for securities fraud, proxy solicitations violations, and aiding and abetting for reasons including the fact that the SEC had failed to prove scienter or negligence. 646 F.3d 536, 543–48 (8th Cir. 2011).  The defendant was a director of the company who was accused of violating securities laws when he participated in the granting of backdated stock options to corporate officials, the issuance of which was said to be contrary to the corporation's public representations.  *Id*. at 539–541.  The Court held that the SEC had failed to establish scienter or negligence where the defendant "had no personal expertise" regarding "complex issues of . . . accounting" and related issues and the SEC failed to present evidence the defendant violated an applicable standard of reasonable care[.]" *Id.* at 543–548.

Similarly, in this case, the SEC alleges no facts that can plausibly lead to the conclusion that Mr. Felton possesses the kind of expert knowledge necessary to support allegations such as the following:

> Felton approved closing orders for unshipped products, understood that his approval would trigger Ironclad to recognize revenue for those products, and knew that such revenue recognition violated relevant accounting policies and inflated Ironclad's reported revenues.

Comp. ¶ 20 (emphasis added).

The Complaint is similarly devoid of allegations that could plausibly lead to the conclusion that Mr. Felton was aware of the specific GAAP provisions dictating when revenue is recognized. At this stage, the SEC is required to supply a brief and concise statement explaining how Mr.

Felton, with no experience in accounting, could have at least acted negligently with respect to the alleged violations of the GAAP rules regarding revenue recognition.  It has failed to do so.

Additionally, the allegations that Mr. Felton acted recklessly are insufficient to satisfy the pleading standards.  The Fifth Circuit has stated that "severe recklessness can supply the scienter required to prove securities fraud." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).  Importantly, however,

> [s]evere recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id*. (internal quotation marks omitted). It is insufficient to allege that a "defendant *should have known* that a material statement or omission was false or misleading."  *See Shanahan*, 646 F.3d at 544.  Here, in the Claims Paragraphs in which the Plaintiff alleges Mr. Felton acted recklessly, it does not provide the factual allegations to support that conclusion.  Among other things the SEC failed to allege facts that if true would establish an extreme departure from the standard of ordinary care.  A review of the Complaint suggests that the SEC did not attempt to support its recklessness allegations with facts, but instead threw a recklessness allegation into several Claims Paragraphs in a last-ditch attempt to hedge against its failure to allege knowledge sufficiently.

A similar flaw exists in Claim Three.  After copying-and-pasting the elements of a violation of Sections 17(a)(1) and 17(a)(3), Plaintiff states that, "Defendants were at least negligent in the above-referenced conduct."  *See* Comp. ¶ 51.  However, nowhere in the Complaint does Plaintiff allege the facts necessary to support the assertion that Mr. Felton acted negligently.  Nowhere in the Complaint does Plaintiff describe the duty that Mr. Felton allegedly owed, or the standard of care that he supposedly violated.  Again, it appears the SEC is attempting to hedge against its

insufficient allegations of knowledge with a single sentence completely unsupported by the facts alleged in the Complaint.  The Court should not countenance this ploy.

### 3.    Conclusory allegations of aiding and abetting.

The Complaint is similarly conclusory, and in part silent, in alleging aiding and abetting violations.  As an initial matter, the SEC failed completely to allege the statute or regulation under which it is attempting to hold Mr. Felton liable for aiding and abetting liability.  In addressing aiding and abetting the Fifth Circuit has stated "the SEC must prove: (1) a primary violation of the securities laws; (2) that the aider and abettor had knowledge of this violation and of his or her role in furthering it; and (3) that the aider and abettor knowingly provided substantial assistance in the commission of the primary violation."  *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 778 (5th Cir. 2017).[3]  Moreover, to satisfy the "substantial assistance" component of aiding and abetting, the SEC must show that the defendant "in some sort associated himself with the venture, that he participated in it as in something that he wished to bring about, and that he sought by his action to make it succeed."  *S.E.C. v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012) (internal quotations and annotations omitted).

Here, however, Plaintiff has failed entirely to provide support for the conclusory assertion that Mr. Felton has aided and abetted any violations.  Owing to the pleading deficiencies identified elsewhere in this motion, the SEC has not pleaded facts sufficient to allege what primary violation

---

[3] In *Life Partners*, the Fifth Circuit noted "The Dodd–Frank Act of 2010 amended Section 20(e) to add the words 'or recklessly' after 'knowingly.' Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, 124 Stat. 1376, § 929O (codified at 15 U.S.C. § 78t(e))" 854 F.3d at 778 n.8.  The addition of the word "recklessly" to the statute was intended to clarify–not substantively change–the law.  *S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 801 (11th Cir. 2015).  Therefore, the term "recklessly" in 15 U.S.C. § 78t(e) should be interpreted as requiring severe recklessness, *i.e.*, an extreme departure from ordinary care that is addressed more fully above.  Given that 15 U.S.C. § 77o(b) was added by Dodd–Frank and contains materially identical language, the same analysis should be applied to that section as well.

Mr. Felton allegedly supported, his knowledge of the violation, or how he knowingly rendered substantial assistance.

For example, Claim Four alleges that Mr. Felton aided and abetted Cordes and Aisenberg by substantially assisting them in violating Section 17(a)(1) and (3) of the Securities Act, but it is not clear what actions constituted the alleged primary violations.  Additionally, the factual allegations to support Mr. Felton's alleged knowledge and substantial and knowing assistance are not contained in the Claims Paragraphs and other than the wholesale incorporation of the entire factual section there is no indication how the Claims Paragraphs are linked to the factual allegations in the Complaint.  Claims Six and Eight are even more problematic in that they allege that all Defendants aided and abetted violations of the reporting provisions without attributing any specific conduct to any specific Defendant.  The Claims alleging aiding and abetting (Claims Two, Four, Six, and Eight ) are insufficiently pleaded and should be dismissed.

**D.     The SEC fails to allege materiality sufficiently.**

In the context of a securities fraud action, a "misstatement or omission is material if there [is] a substantial likelihood that the [misstatement or omission] would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (internal quotation marks and citations omitted).  Furthermore, "[m]ateriality is not judged in the abstract, but in light of the surrounding circumstances."  *Id.* at 866 (internal quotation marks and citation omitted). Materiality is also an element of violations of Section 13(a) of the Exchange Act.  *See e.g., SEC v. Life Partners Holdings, Inc.* 854 F.3d 765, 779 (5th Cir. 2017).   Plaintiff must therefore demonstrate that the alleged fraud on the part of Mr. Felton sufficiently alleges material

misrepresentations in order to properly plead Claims Six and Nine in addition to the claims that include fraud as an element, Claims One through Four.

In paragraph forty, the SEC makes the global and conclusory allegation that Ironclad's public filings were materially misleading. As to Mr. Felton, who was not responsible for Ironclad's filings, even assuming he did everything alleged in the Complaint, most of the allegations lack the details that might tend to support the conclusion the materiality element would be met.

A glaring example of the SEC's failure to allege the necessary facts related to materiality is found in paragraph twenty-one. Specifically, the SEC references a January 2017 email in which Mr. Felton refers to three orders that need to be moved to another location before auditors arrived. *See* Comp. ¶ 21. The SEC does not identify the quarter in which these revenues were recognized, nor does it state the amount of money involved in the transactions. Defendant does not ask this Court to determine what amount of improperly recognized revenue would be "material" as a matter of law, since the exercise would be meaningless given Plaintiff's failure to plead even an estimate. It is surely the duty of Plaintiff to allege an amount of revenue or even a percentage of quarterly revenue supposedly inflated as a result of the alleged inventory move so that this Court and Defendant can determine if the alleged misrepresentation could even be considered material.

If the three orders are from the fourth quarter of 2016, by the Plaintiff's own calculations, thirteen of the orders compromised only 5% of Ironclad's quarterly revenue. *See* Comp. at ¶ 17. But the Plaintiff's allegation against Mr. Felton relies on only three of those thirteen orders. Do the orders constitute 0.1% of the total quarterly revenue? Do they constitute 4.5% of the revenue? The Complaint provides no answer. Mr. Felton and this Court are therefore left to ponder what amount of money Plaintiff alleges was improperly recognized and unable to determine if the amount in question is even within the realm of materiality. Due to this insufficiency in the

Complaint, this Court should not consider the allegations in paragraph twenty-one or similar paragraphs to have sufficiently alleged materiality or consider them in support of any for which materiality is an element.

> **E.    The SEC fails to allege Mr. Felton's alleged actions occurred "in the offer or sale" or in "connection with the purchase or sale" of a security.**

The SEC fails to allege that Mr. Felton's alleged actions were "in the offer or sale of any securities" (15 U.S.C. § 77q(a)) or were in "connection with the purchase or sale" of securities (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5). Setting aside the conclusory, cut-and-paste allegations in paragraph 6 and the Claims Paragraphs, that are not entitled to the presumption of truth, there is only one sentence in the entire Complaint that even attempts to make allegations of an offer, sale, or purchase to support the SEC's first four claims: "During the Relevant Period, Ironclad issued stock to its employees upon the exercise of employee stock options and publicly disclosed proceeds from the issuance of that stock." Comp. at ¶ 6. This allegation is insufficient for two main reasons.

First, in alleging an issuance of stock to employees, the SEC stops short of asserting that there was ever an "offer," "purchase," or "sale" of securities. This is a fatal omission because it cannot be assumed that an offer, purchase, or sale ever occurred. Courts have found that whether employee stock options involve an offer or sale of securities depends on the specifics of the arrangement—allegations that are completely absent from the SEC's Complaint in this case. *See, e.g.*, *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 736 (5th Cir.), *cert. denied*, 140 S. Ct. 389, 205 L. Ed. 2d 218 (2019) (holding that employers grant of stock options to its employees did not involve the "purchase or sale" of securities and affirming the district court's dismissal of plaintiffs' complaint alleging securities fraud); *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 539, 544–45 (D.N.J. 1999) (collecting cases analyzing whether particular plans involved a purchase or sale or

securities).   Additionally, even the SEC has acknowledged that the applicability of anti-fraud provisions depends on the specific characteristics of the employee benefit plan in question.   For example, in SEC Release No. 31-6188, the SEC provided examples of the types of employee benefit plans that would not involve the offer or sale of securities.   Employee Benefit Plans, S.E.C. Securities Act Release No. 33-6188, 1980 WL 29482 (Feb. 1, 1980), **Exhibit A**, Appx. at 8–13.

Second, even assuming the SEC had alleged sufficiently an offer, sale, or purchase of securities, there are no allegations tending to show a connection with Mr. Felton's alleged actions. Importantly, the unidentified stock issuance alleged in paragraph six supposedly occurred sometime during "the Relevant Period" – that is "[f]rom at least December 2015 through June 2017." Comp. at ¶ 1.  The timing matters.  For example, if the SEC had adequately alleged a sale of securities that occurred in December 2015, how could that possibly be connected to any actions that allegedly occurred later in time?  After all, "there is little justification for penalizing alleged omissions or misstatements which occur [after the relevant decision] and which have no effect on the decision." *Cf. APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1267 & 1276 (11th Cir. 2007) (internal quotation marks and citations omitted) (discussing the commitment theory, and illustrating the obvious reality that timing is necessarily central to the issue of whether the requisite connections exist).

Here, the SEC's abject failure to allege an offer, sale, or purchase of securities in a non-conclusory manner much less to allege the timing of such offer, sale, or purchase of securities means its first four claims must be dismissed.

### F.   Allegations concerning Mr. Felton's alleged deceptive alteration of paperwork are false as demonstrated by full versions of the referenced communications.

The Fifth Circuit has "held that [d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and

are central to [its] claim." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (internal quotation marks omitted) (first alteration in original).

Here, in paragraph thirty-four, the SEC refers to a series of communications between Cordes and Customer D [Action Specialties] and even quotes from the same. Given that this paragraph contains a significant portion of the non-conclusory allegations against Mr. Felton in the entire Complaint, it appears the Plaintiff believes those communications are central to its claim(s). Therefore, the Court may consider the attached emails without converting this 12(b)(6) motion into one for summary judgment.

A review of the actual emails reveals that Mr. Felton was not "concealing" anything but was instead correcting inaccurate documents. More specifically, in December 2016, Cordes was communicating directly with Lenny Lipari, the President of Action Specialties about potential transactions. *See* **Exhibit B**, Appx. at 42. On December 29, 2016 Cordes wrote to Lipari:

> Lenny to be candid, really want to make the order with you as it helps us and you. As per my other email we will take back up to $100k of Vibram. If you can get order in for whatever else you want today we will get return worked out after the weekend.

**Exhibit C**, Appx. at 45. On its face, Cordes' offer clearly contemplated two transactions: (1) an immediate order of new products and (2) a later return of products. The same day, Lipari accepted Cordes proposed offer stating:

> Yes, we will return $100k of the Vibram glove.
> My purchasing well send a PO for replacement gloves.

**Exhibit C**, Appx. at 44. The problem began when Action Specialties sent paperwork that did not reflect the agreement previously reached between Cordes and Lipari, but instead erroneously indicated the two separate transactions were an "exchange." *See* **Exhibit D**, Appx. at 47. Therefore, at Cordes direction, Mr. Felton corrected the "exchange" paperwork to reflect the actual deal reached between the parties—a purchase and return. Correcting inaccurate paperwork is not

fraudulent on its face.[4]  Moreover, the Plaintiff fails to allege whom, if anyone, was misled by Mr.

Felton's "fraud" or how they were misled.  In short, any claim based on Mr. Felton's correction of

the Action Specialties' paperwork must be dismissed.

### V.      CONCLUSION

For the reasons stated above, Mr. Felton requests the Court strike Footnote 1 and dismiss

Plaintiff's Complaint in its entirety.  Mr. Felton also requests such other and further relief to which

he may be justly entitled.

Dated: June 15, 2020                            Respectfully Submitted,

                                                */s/ David W. Klaudt*
                                                David W. Klaudt
                                                State Bar No.  00796073
                                                klaudtd@gtlaw.com
                                                Robert Long
                                                State Bar No. 24089210
                                                longr@gtlaw.com
                                                Jared Weir
                                                State Bar No. 24075253
                                                weirj@gtlaw.com
                                                Michael Besser
                                                State Bar No. 24105464
                                                besserm@gtlaw.com
                                                **GREENBERG TRAURIG, LLP**
                                                2200 Ross Avenue, Suite 5200
                                                Dallas, Texas 75201
                                                Tel: (214) 665-3600
                                                Fax: (214) 665-3601


                                                **ATTORNEYS FOR THOMAS J. FELTON**

---

[4] Mr. Felton notes that if the SEC manages to state a claim against him in an amended pleading, the evidence will reveal that Ironclad's ordering system did not even have the ability to process an "exchange" transaction.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he communicated with counsel for the SEC, Jason Reinsch, on June 15, 2020, who indicated that the SEC is opposed to the relief sought in the Motion to Strike.

*/s/ David W. Klaudt*
David W. Klaudt


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all parties that have appeared through the Court's electronic filing system on June 15, 2020.

*/s/ David W. Klaudt*
David W. Klaudt